1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

DAVID H. MCELWAIN,

Plaintiff,

v.

THE BOEING COMPANY,

Defendant.

CASE NO. C16-0990JLR

ORDER

15

## I.   INTRODUCTION

16     Before the court is Defendant The Boeing Company's ("Boeing") motion for

17 summary judgment.  (Mot. (Dkt. # 10).)  Plaintiff David H. McElwain has not filed an

18 opposing memorandum, but has submitted two declarations in opposition to Boeing's

19 motion.  (*See* McElwain Decl. (Dkt. # 18); Eisenberger Decl. (Dkt. # 19).)  Boeing has

20 filed a reply.  (*See* Reply (Dkt. # 20).)  Having considered these submissions, the relevant

21

22

1 │ portions of the record, and the applicable law, and considering itself fully advised,[1] the

2 │ court GRANTS Boeing's motion for summary judgment.

3 │ <center>**II.    BACKGROUND**</center>

4 │     Boeing employed Mr. McElwain from 1978 until October 2014.  (Compl. (Dkt.

5 │ # 1-2) ¶¶ 2.3, 2.27; Answer (Dkt. # 5) ¶¶ 2.3, 2.27.)  Mr. McElwain alleges that Boeing

6 │ terminated his employment for poor attendance while he was on medical leave.  (Compl.

7 │ ¶ 2.27.)  Mr. McElwain alleges that he was diagnosed with alcoholism, anxiety, and

8 │ depression and that he gave notice of these conditions to Boeing.  (Compl. ¶¶ 2.6, 2.8;

9 │ McElwain Decl. ¶¶ 4-5.)  Boeing denies these allegations.  (Answer ¶¶ 2.6-2.10.)

10 │     Mr. McElwain was charged with and convicted of driving under the influence

11 │ ("DUI") in King County, Washington.  (Seabright Decl. (Dkt. # 12) ¶ 2.)  As a result of

12 │ his conviction, Mr. McElwain was sentenced to serve 30 days in jail.  (*Id.* Ex. A.)  Mr.

13 │ McElwain requested to participate in King County's Work Education Release ("WER")

14 │ program in lieu of incarceration.  (Seabright Decl., Ex. B at 4).  Mr. McElwain asked his

15 │ supervisor at Boeing, William Fletcher, to sign a document that Mr. McElwain said

16 │ would allow him to participate in the WER program.  (Fletcher Decl. (Dkt. # 14) ¶ 3.)

17 │ Mr. Fletcher signed the paperwork.  (*Id.* ¶ 4.)  However, after consulting with Boeing's

18 │ Human Resources Generalist, Mr. Fletcher asked Mr. McElwain to return the signed

19 │ document, which Mr. Fletcher then destroyed.  (*Id.* ¶ 5.)

20 │

21 │     [1] Neither party requested oral argument, and the court considers it unnecessary in this

22 │ instance.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1    Despite the withdrawal of Mr. Fletcher's approval, Mr. McElwain was accepted

2  into the WER program. (Seabright Decl., Ex. C.)  Mr. McElwain entered the program on

3  September 28, 2014. (*See id.*)  On September 30, 2014, Mr. McElwain requested and

4  was given a pass release from the WER facility to attend a probation appointment and

5  treatment. (*Id.*, Ex. E).  However, Mr. McElwain returned to the WER facility late after

6  attending his appointments, in violation of the Conditions of Conduct for the WER

7  program. (*Id.*)  As a result of this violation, Mr. McElwain was released from the

8  program and returned to full-time detention on or around October 1, 2014. (*Id.*)

9    On October 14, 2014, Boeing issued a "corrective action memo" informing Mr.

10  McElwain that he was being terminated for violating Boeing's attendance policy.

11  (Haydon Decl., Ex. B.)  Specifically, the memo stated that Mr. McElwain had been

12  absent from work from October 1 through October 14, 2014. (*Id.*)

13    In 2016, Mr. McElwain filed suit against Boeing, alleging that it had discriminated

14  against him based on his age and disability in violation of the Washington Law Against

15  Discrimination ("WLAD") and the Age Discrimination in Employment Act ("ADEA")

16  and had failed to accommodate his disability in violation of the Americans with

17  Disabilities Act (ADA) and WLAD. (*See generally* Compl.)

18    Boeing filed this motion for summary judgment on October 13, 2016. (*See* Mot.)

19  Shortly thereafter, the court granted Mr. McElwain's attorney's motion to withdraw as

20  counsel. (*See generally* Order (Dkt. # 17).)  Mr. McElwain, who is now proceeding *pro*

21  *se*, did not file a memorandum in opposition to Boeing's motion for summary judgment.

22  (*See generally* Dkt.)  Rather, Mr. McElwain filed two declarations—his own and that of

ORDER- 3

1  Ken Eisenberger, his mental-health counselor.[2]  (*See generally* McElwain Decl.;

2  Eisenberger Decl.)  The court now considers Boeing's motion.

3                                   **III.   ANALYSIS**

4  **A.   Legal Standard**

5         Summary judgment is appropriate if the evidence shows "that there is no genuine

6  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

7  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v.*

8  *Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the

9  outcome of a case.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A factual

10  dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to

11  find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th

12  Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

13         The moving party bears the initial burden of showing there is no genuine dispute

14  of material fact and that the movant is entitled to prevail as a matter of law.  *Celotex*, 477

15  U.S. at 323.  If the moving party does not bear the ultimate burden of persuasion at trial,

16  it can show the absence of a dispute of material fact in two ways:  (1) by producing

17  evidence negating an essential element of the nonmoving party's case, or (2) by showing

18  that the nonmoving party lacks evidence of an essential element of its claim. *Nissan Fire*

19  _____

20         [2] "A motion for summary judgment may not be granted based on a failure to file an
opposition to the motion." *Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013). "Rule

21  56 requires district courts to assess whether 'the motion and supporting materials' entitle the
movant to summary judgment." *Id.* (quoting Fed. R. Civ. P. 56(e)(3)). However, "an opposing

22  party's failure to respond to a fact asserted in the motion permits a court to 'consider the fact
undisputed for purposes of the motion.'" *Id.* (quoting Fed. R. Civ. P. 56(e)(2)).

1 | & *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving

2 | party meets its burden of production, the burden then shifts to the nonmoving party to

3 | identify specific facts from which a fact finder could reasonably find in the nonmoving

4 | party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

5 | The court is "required to view the facts and draw reasonable inferences in the

6 | light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378

7 | (2007). The court may not weigh evidence or make credibility determinations in

8 | analyzing a motion for summary judgment because these responsibilities belong to the

9 | fact-finder. *Anderson*, 77 U.S. at 249-50. Nevertheless, the nonmoving party "must do

10 | more than simply show that there is some metaphysical doubt as to the material facts . .

11 | . .Where the record taken as a whole could not lead a rational trier of fact to find for the

12 | nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal

13 | quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

14 | 475 U.S. 574, 586-587 (1986)). Accordingly, "mere allegation and speculation do not

15 | create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*,

16 | 83 F.3d 1075, 1081 (9th Cir. 1996). "A trial court can only consider admissible evidence

17 | in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d

18 | 764, 773 (9th Cir. 2000).

19 | **B.    Disability Discrimination**

20 | 1.  Disparate Treatment - WLAD

21 | Washington courts use the *McDonnell Douglas* burden-shifting framework when

22 | analyzing discrimination claims. *Domingo v. Boeing Employees' Credit Union*, 98 P.3d

ORDER- 5

1 1222, 1225 (Wash. App. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

2 (1973). Under this approach, "[a]n employee claiming disparate treatment discrimination

3 bears the initial burden of setting forth a prima facie case." *Callahan v. Walla Walla*

4 *Housing Auth.*, 110 P.3d 782, 786 (Wash. App. 2005). A prima facie case of disparate

5 treatment disability discrimination has four elements: (1) the employee is disabled; (2)

6 the employee is doing satisfactory work; (3) the employee suffered an adverse

7 employment action; and (4) the employee was discharged under circumstances that raise

8 a reasonable inference of unlawful discrimination. *Id.* Once the plaintiff establishes a

9 prima facie case, an inference of discrimination arises. *Domingo*, 98 P.3d at 1225. "In

10 order to rebut this inference, the defendant must present evidence that the plaintiff was

11 terminated for a legitimate reason." *Id.* "The plaintiff must then show that the proffered

12 reason is a pretext for discrimination." *Id.* "The plaintiff has the final burden of

13 persuading the trier of fact that discrimination was a substantial factor in the termination

14 decision." *Id.* "In general, the plaintiff must produce sufficient evidence to enable a jury

15 to find that the adverse employment action was, more likely than not, the result of

16 unlawful discrimination." *Callahan*, 110 P.3d at 786.

17        Boeing contends that Mr. McElwain's disparate-treatment claim fails because he

18 was not doing satisfactory work, as he was absent without excuse in the two weeks

19 preceding his termination. (*See* Mot. at 13; *see generally* Seabright Decl.) In his

20 complaint, Mr. McElwain alleges that, during his approximately 35 years of employment

21 at Boeing, he "was a dedicated employee, without any issues, negative performance

22 reviews, or safety incidents" and that he "routinely earned performance and safety

ORDER- 6

1  awards." (Compl. ¶¶ 2.4-2.5.) Boeing denies these allegations. (Answer ¶¶ 2.4-2.5.)

2  But even viewing these allegations in the light most favorable to Mr. McElwain, the court

3  draws only the inference that Mr. McElwain was performing satisfactorily at some

4  periods during his employment, not that he was doing satisfactory work during the time

5  leading up to his termination. Indeed, "excessive absenteeism" prevents an employee

6  from completing satisfactory work. *Young v. Ben Franklin Transit*, 83 Fed. App'x 900

7  (9th Cir. 2003) (applying WLAD)); *see also Mendia v. Hawker Beechcraft Corp.*, No.

8  06-1212-JTM, 2008 WL 216914, at *5 (D. Kan. Jan. 17, 2008) (finding that plaintiff

9  could not prove he was doing satisfactory work when "he was absent from work, without

10  the proper excuse, and thus did not do any work at all, much less satisfactory work").

11      But even if the court were to assume that Mr. McElwain was doing satisfactory

12  work prior to his termination—and so has made out a prima facie case for disparate

13  treatment—his claim would still fail. Once a plaintiff has established a prima facie case

14  and an inference of discrimination arises, "the defendant must present evidence that the

15  plaintiff was terminated for a legitimate reason." *Domingo*, 98 P.3d at 1225. Boeing has

16  presented evidence that Mr. McElwain was terminated as a result of his two-week

17  unexcused absence from work, a violation of company policy. (Haydon Decl., Ex. B.)

18  The burden then shifts back to Mr. McElwain "to show that the proffered reason is a

19  pretext for discrimination." *Id.* Mr. McElwain makes no argument to this effect, nor

20  does he present any specific facts that would support a claim of pretext. Because Mr.

21  McElwain fails "to rebut the defendant's alternative explanation for the adverse action,"

22  Boeing is entitled to summary judgment. *Callahan*, 110 P.3d at 786.

ORDER- 7

1     2.   <u>Failure to Accommodate  - WLAD and ADA</u>

2       Although "[j]udicial interpretations of the ADA and the WLAD differ slightly in

3 the way they phrase the elements of an accommodation under the two statutes . . . the

4 basic requirements are essentially the same." *McDaniels v. Grp. Health Co-op*, 57 F.

5 Supp. 3d 1300, 1314 (W.D. Wash. 2014). Both statutes require the plaintiff to show that

6 (1) he is disabled; (2) he is qualified for the job in question and capable of performing it

7 with reasonable accommodation; (3) the employer had notice of his disability; and (4) the

8 employer failed to reasonably accommodate his disability. *Id.*; *see also Samper v.*

9 *Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012); *Zivkovic v. S.*

10 *Cal. Edison Co.*, 302 F.3d 1080, 1088-89 (9th Cir. 2002); *Davis v. Microsoft Corp.*, 70

11 P.3d 126, 131 (Wash. 2003).

12       Boeing presents no argument on whether Mr. McElwain is disabled or whether it

13 was properly notified of any disability. (*See* Mot. at 8-9.) Rather, Boeing argues that Mr.

14 McElwain's request for Boeing personnel to sign the WER paperwork was not a request

15 for a reasonable accommodation of a disability, but rather a request for excusal of

16 criminal conduct and subsequent incarceration. (*Id.*) Mr. McElwain asserts that

17 company approval of his participation in the WER program was a reasonable

18 accommodation that would have enabled him to perform the essential functions of his job

19 in spite of his alcoholism. (McElwain Decl. ¶ 7.) But Mr. McElwain has not shown that

20 it was his *alcoholism* that needed to be accommodated for him to continue performing his

21 job. On the contrary, the record demonstrates that Mr. McElwain was unable to work

22 because he was incarcerated. (Seabright Decl., Ex. E; Haydon Decl., Ex. B.)

1    In his complaint, Mr. McElwain appears to conflate his alcoholism with his DUI

2    conviction, stating that he was arrested for "an incident arising from his disabilities."

3    (Compl. ¶ 2.11.)  Although conduct resulting from a disability is generally considered to

4    be part of the disability, the Ninth Circuit has recognized "a distinction between

5    disability-caused conduct and disability itself" in cases involving alcohol-fueled

6    misconduct and resultant termination.  *Humphrey Mem'l Hosps. Ass'n*, 239 F.3d 1128,

7    1139 n.18 (9th Cir. 2001); *cf. Newland v. Dalton*, 81 F.3d 904, 906 (9th Cir. 1996)

8    (holding that an employer may, consistent with the Rehabilitation Act, fire an employee

9    who went on a "drunken rampage" despite employee's claims that such behavior was

10   caused by his alcoholism).  Such a distinction is further supported by the ADA itself,

11   which provides that an employer "may hold an employee who . . . is an alcoholic to the

12   same qualification standards for employment or job performance and behavior that such

13   entity holds other employees, even if any unsatisfactory performance or behavior is

14   related to the . . . alcoholism of such employee." 42 U.S.C. § 12114(c)(4).  Therefore,

15   although Mr. McElwain's DUI conviction may be related to his alcoholism, Boeing was

16   not required to make arrangements to provide for Mr. McElwain's continued attendance

17   during the time he was incarcerated for his DUI conviction.  The ADA "require[s] the

18   employer to make a reasonable accommodation of an employee's disability," but it does

19   not "reasonably require[] accommodation to overlook infractions of the law." *Despears*

20   *v. Milwaukee Cty.*, 63 F.3d 635, 637 (7th Cir. 1995) (citing *Leary v. Dalton*, 53 F.3d 748,

21   753 (1st Cir. 1995)).

22

ORDER- 9

1       Although the court has not located any Washington authority articulating the

2 distinction between alcoholism and alcohol-related conduct, Washington courts look to

3 federal case law interpreting the ADA to guide their interpretation of the WLAD. *Kumar*

4 *v. Gate Gourmet*, 325 P.3d 193, 197 (Wash. 2014). Thus, the court also applies this

5 distinction to the WLAD for the purposes of this analysis. However, even if Washington

6 courts would not recognize this distinction, Mr. McElwain still fails to make a prima

7 facie case for disability discrimination under WLAD. The WLAD requires a plaintiff to

8 demonstrate that his employer "failed to affirmatively adopt measures that were available

9 to the employer and medically necessary" to accommodate his disability. *Davis*, 70 P.3d

10 at 131. Mr. McElwain has not raised a genuine dispute as to whether Boeing's approval

11 of his WER paperwork was medically necessary to accommodate his alcoholism. In fact,

12 Mr. McElwain has not demonstrated that Boeing's approval was even necessary to his

13 participation in the WER, as he was accepted to the program in spite of the fact that Mr.

14 Fletcher rescinded his approval. (Seabright Decl., Ex. C.) Accordingly, Boeing is

15 entitled to summary judgment on Mr. McElwain's failure-to-accommodate claims under

16 both statutes.

17 **C.   Age Discrimination – WLAD and ADEA**

18     1.  Disparate Treatment - WLAD

19       In order to make out a prima facie case for age discrimination based on disparate

20 treatment under WLAD, a plaintiff must demonstrate that he: (1) belongs to the

21 protected class of individuals between 40 and 70 years of age and (2) was treated less

22 favorably in the terms and conditions of his employment (3) than a similarly situated,

1  nonprotected employee. *Jones v. Rabanco, Ltd.*, 439 F. Supp. 2d 1149, 1160 (W.D.

2  Wash. 2006) (citing *Washington v. Boeing*, 19 P.3d 1041, 1048 (Wash. App. 2000));

3  *Griffith v. Schnitzer Steel Indus., Inc.*, 115 P.3d 1065, 1070 (Wash. App. 2005).  The

4  plaintiff must also demonstrate that he and the similarly situated comparator were doing

5  substantially the same work. *Id.*

6      Mr. McElwain's disparate treatment claim fails because he has not made out a

7  prima facie case.  The parties do not dispute that Mr. McElwain is a member of the

8  protected age class or that he was subject to adverse employment action—termination.

9  (Compl. ¶¶ 2.2, 2.27; Answer ¶¶ 2.2, 2.27.).  However, Mr. McElwain makes only a bare

10 allegation that he was "replaced by a younger person" after his termination and does not

11 provide any specific facts to support that allegation or propose a comparator.  (Compl.

12 ¶ 3.6.)  Therefore, summary judgment in favor of Boeing is appropriate on this claim.

13      2.  ADEA

14      In order to establish a prima facie case of age discrimination under the ADEA, a

15 plaintiff must show that he was: (1) at least 40 years old; (2) performing his job

16 satisfactorily; (3) discharged; and (4) either replaced by substantially younger employees

17 with equal or inferior qualifications or discharged under circumstances otherwise giving

18 rise to an inference of age discrimination. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d

19 1201, 1207-08 (9th Cir. 2008).  In his complaint, Mr. McElwain makes only the bare

20 allegation that Boeing "would not have terminated [him] but for his age and disabilities"

21 (Compl. ¶ 3.22), and he does not present any evidence supporting a prima facie case of

22 age discrimination (*see generally* McElwain Decl.; Eisenberger Decl.).  Accordingly, Mr.

ORDER- 11

1   McElwain's ADEA claim also fails and summary judgment in favor of Boeing is

2   appropriate.

3   **D.      Retaliation – WLAD and ADA**

4          A prima facie case for retaliation under either the WLAD or the ADA "requires a

5   showing that (1) plaintiff engaged in protected activity, (2) []he suffered an adverse

6   employment action, and (3) there was a causal link between the two." *Daniel v. Boeing*

7   *Co.*, 764 F. Supp. 2d 1233, 1245 (W.D. Wash. 2011).  Mr. McElwain alleges that he was

8   terminated for requesting a reasonable accommodation of his disability under the ADA

9   and WLAD.  Pursuing one's rights under either statute constitutes protected activity.  *See*

10  *id.* (citing *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004)).  Boeing

11  contends that Mr. McElwain's request was not a protected activity because it was not a

12  request for a reasonable accommodation of his disability.  (Mot. at 8-9.)  Indeed, the

13  court concluded above that Mr. McElwain's request was not a request for an

14  accommodation of his alcoholism, but rather a request that Boeing excuse his

15  misconduct.  *See supra* § III.B.  Such a request is not protected by either the ADA or the

16  WLAD.  *See id.*  Accordingly, Mr. McElwain fails to make out a prima facie case of

17  retaliation, and Boeing is entitled to summary judgment on this claim.

18                          **IV.    CONCLUSION**

19         For the foregoing reasons, the court GRANTS Boeing's motion for summary

20  judgment (Dkt. # 10) and enters summary judgment in favor of Boeing on all claims

21  before the court.

22

ORDER- 12

1   Dated this 20ᵗʰ day of March, 2017.

2

3                                      _____
                                       JAMES L. ROBART
4                                      United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 13